**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ILLINOIS NUT & CANDY HOME OF )
FANTASIA CONFECTIONS, LLC, an )
Illinois limited liability company, )
individually and on behalf of all others )
similarly situated, )
                                 )      Case No. 14-cv-949
Plaintiff, )
                                 )      Hon. Jorge Luis Alonso
v. )
                                 )      Magistrate Judge Maria Valdez
GRUBHUB, INC., a Delaware corporation, )
and GRUBHUB SEAMLESS, INC., a )
Delaware corporation, )
                                 )
                Defendants. )

**PLAINTIFF'S MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Submitted by:

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT** PC
17 N. State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.241.1260
www.siprut.com

*Attorneys for Plaintiff and the*
*Settlement Class*

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.    PROCEDURAL HISTORY ....................................................................................2

III.    COMPONENTS OF THE SETTLEMENT ..........................................................3

        A.  Benefits to Settlement Class Members ....................................................3

        B.  Incentive Award to Class Representative ................................................4

        C.  Attorneys' Fees and Costs .......................................................................4

IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23 ....................................................................4

        A.  Certification of the Proposed Settlement Class ......................................4

              1.  Numerosity – Federal Rule of Civil Procedure 23(a).........................5
              2.  Commonality/Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)...............................................................................6
              3.  Typicality – Federal Rule of Civil Procedure 23(a)(3) .....................8
              4.  Adequacy of Representation–Federal Rule of Civil Procedure 23(a)(4) .........8
              5.  Superiority – Federal Rule of Civil Procedure 23(b)(3)...................9

V.    THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE FINAL APPROVAL ......................................................................................................10

        A.  Strength of the Case Measured Against the Settlement .......................11

        B.  The Complexity, Length, and Expense of Continued Litigation ...........16

        C.  The Amount of Opposition to the Settlement........................................16

        D.  The Lack of Collusion In Reaching a Settlement ................................17

        E.  The Stage of the Proceedings and the Amount of Discovery Completed..............18

VI.    THE COURT-APPROVED NOTICE PROGRAM SATIFIES DUE PROCESS.............19

VII.    CONCLUSION....................................................................................................20

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997)....................................................................................4

*Carson v. American Brands, Inc.,*
450 U.S. 79 (1981) ...................................................................................11

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011)................................................................................6

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee,*
616 F.2d 305 (7th Cir. 1980) ...............................................................10, 15

*Butler v. Sears, Roebuck & Co.,*
2012 WL 5476831 (7th Cir. Nov. 13, 2012) ...............................................7

*CE Design Ltd. v. King Architectural Metals, Inc.,*
637 F.3d 721 (7th Cir. 2011) ....................................................................13

*Cotton v. Hinton,*
559 F.2d 1326 (5th Cir. 1977) ..................................................................12

*E.E.O.C. v. Hiram Walker & Sons, Inc.,*
768 F.2d 884 (7th Cir. 1985) ...............................................................10, 11

*Eubank v. Pella Corp.,*
753 F.3d 718 (7th Cir. 2014) ....................................................................17

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.,*
128 F.3d 1074 (7th Cir. 1997) ..................................................................10

*Gene & Gene L.L.C. v. BioPay, L.L.C.,*
541 F.3d 318 (5th Cir. 2008) ....................................................................14

*In re Corrugated Container Antitrust Litig.,*
643 F.2d 195 (5th Cir. 2010) ....................................................................18

*Ira Holtzman, C.P.A. v. Turza,*
728 F.3d 682 (7th Cir. 2013) ..................................................................6, 13

*Isby v. Bayh,*
75 F.3d 1191 (7th Cir. 1996) ...............................................................10, 11

*Kenro, Inc. v. Fax Daily, Inc.*,
962 F. Supp. 1162 (S.D. Ind. 1997) ..........................................................14

*Mars Steel v. Continental Ill. Nat'l Bank & Trust*,
834 F.2d 677 (7th Cir. 1987) ...................................................................17

*Patterson v. Gen. Motors Corp.*,
631 F.2d 476 (7th Cir. 1980) .....................................................................6

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ...................................................................6

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
463 F. 3d 646 (7th Cir. 2006) ..................................................................11

**UNITED STATES DISTRICT COURT CASES**

*Am. Civil Liberties Union Resolution Corp.*,
128 F.3d 1074 (7th Cir. 1997) .................................................................10

*Cannon v. Texas Gulf Sulphur Co.*,
55 F.R.D. 308 (S.D.N.Y. 1969) ...............................................................12

*Craftwood Lumber Co. v. Interline Brands, Inc.*,
2013 WL 4598490, (N.D. Ill. Aug. 29, 2013) .........................................12

*Fletcher v. ZLB Behring LLC*,
245 F.R.D. 328 (N.D. Ill. 2006)................................................................7

*G.M. Sign, Inc. v. Brink's Mfg. Co.*,
2011 WL 248511 (N.D. Ill. Jan. 25, 2011).............................................14

*Gomez v. Ill. State Bd. of Educ.*,
117 F.R.D. 394 (N.D. Ill. 1987)................................................................8

*Hall v. Bank of Am.*,
*N.A.*, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014)................................18

*Hinman v. M and M Rental Ctr., Inc.*,
545 F. Supp. 2d 802 (N.D. Ill. 2008) ........................................................8

*Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*,
988 F. Supp. 1130 (N.D. Ill. 1997) .........................................................10

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ......................................................16

*In re Cendant Corp. Secs. Litig.*,
109 F. Supp. 2d 235 (D.N.J. 2000) ........................................................12

*In re Mexico Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000) ....................................................17

*In re Neopharm, Inc. Securities Litig.*,
225 F.R.D. 563 (N.D. Ill. 2004) ..............................................................8

*In re RJR Nabisco, Inc. Secs. Litig.*,
1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ...........................................12

*Maxwell v. Arrow Fin. Servs., LLC*,
2004 WL 719278 (N.D. Ill. March 31, 2004) ...........................................5

*Pope v. Harvard Banchares, Inc.*,
240 F.R.D. 383 (N.D. Ill. 2006) ..............................................................5

*Radmanovich v. Combined Ins. Co. of Am.*,
216 F.R.D. 424 (N.D. Ill. 2003) ..............................................................7

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011) .....................................................18

*Smith v. Nike Retail Servs., Inc.*,
234 F.R.D. 648 (N.D. Ill. 2006) ..............................................................5

*Whitten v. ARS Nat'l Servs. Inc.*,
2001 WL 1143238 (N.D. Ill. Sept. 27, 2001) ...........................................6

## STATUTES AND FEDERAL RULES

Fed. R. Civ. P. 23 ...................................................................... *passim*

47 U.S.C. § 227 .....................................................................1, 12

## MISCELLANEOUS

Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS
(4th ed. 2002) .........................................................................................5

*Manual for Complex Litigation*
(4th ed. 2004) ...................................................................................16, 18

## **EXHIBIT LIST**

Settlement Agreement and Release ....................................................................................Exhibit 1

Declaration of Joseph J. Siprut .......................................................................................Exhibit 2

Declaration of Thomas Hayden ........................................................................................Exhibit 3

Declaration of Brian Radetich ..........................................................................................Exhibit 4

Proposed Final Order .......................................................................................................Exhibit 5

Pursuant to Fed. R. Civ. P. 23, Plaintiff Illinois Nut & Candy Home of Fantasia Confections, LLC ("Plaintiff"), by its counsel, respectfully submits the following as its Motion for Final Approval of Proposed Class Settlement. For the reasons detailed below, Plaintiff respectfully requests that the Court enter an Order granting final approval of the Settlement as fair, reasonable, and adequate.[1]

## I.    INTRODUCTION

This case is based on the allegation that Defendants Grubhub, Inc. (n/k/a Grubhub Holdings, Inc.) and Grubhub Seamless, Inc. (n/k/a Grubhub, Inc.) (collectively, "Grubhub") sent unsolicited advertisements with deficient opt-out notices to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

Class Counsel has secured a strong and hard-fought settlement with Grubhub that provides Class Members with the opportunity to receive $50.00 – cash – to be paid from the Settlement Fund. The Settlement reached in this case – preliminarily approved by this Court on August 29, 2014 – should now be granted Final Approval.

After extensive notice was given to Class Members in accordance with the Settlement Agreement (attached as Exhibit 1 hereto) and the Preliminary Approval Order, no Class Members sought to be excluded, and ***not one Class Member objected to the settlement***. As such, since the Class has overwhelmingly approved the Settlement after being provided notice, and since the Settlement is demonstrably an outstanding result that meets or exceeds the requisite standards, this Settlement should now receive Final Approval.

---

[1] All defined terms in this brief are intended to have the definitions assigned to them in the Settlement Agreement.

## II. PROCEDURAL HISTORY

Plaintiff filed its class action complaint ("Complaint") on February 11, 2014 against Grubhub on behalf of itself and a proposed class of all individuals or entities in the United States who, on or before August 29, 2014, received from or on behalf of Grubhub one or more (i) unsolicited facsimile advertisements or (ii) facsimile advertisements that did not contain the opt-out language required by the Telephone Consumer Protection Act ("TCPA"). (*See generally* Docket No. 1.) The case is currently pending before this Court.

Between February and April 2014, Grubhub sought several extensions to file a response to Plaintiff's Complaint, ultimately filing its Answer and Affirmative Defenses on May 2, 2014. (Docket Nos. 12, 17, 20.) In its Answer, Grubhub asserted a number of affirmative defenses, including that Plaintiff failed to state a claim because the faxes were not received on a "telephone facsimile machine" within the meaning of the TCPA, that Plaintiff lacks standing, and that Grubhub is not vicariously liable. (Docket No. 20.)

Meanwhile, the Parties continued an exchange of information concerning the claims and defenses in this case, and the Class size. The Parties also discussed potential settlement frameworks. On May 28, the Parties represented to the Court that they were engaged in substantive settlement negotiations and asked the Court to stay discovery deadlines so that the Parties could continue their discussions and mutual exchange of information in an environment conducive to settlement discussions. (Docket No. 21.)

Settlement negotiations continued for two months thereafter, until the Parties' efforts finally culminated in a settlement on July 10, 2014 (*See* Declaration of Joseph J. Siprut (the "Siprut Decl."), attached hereto as Exhibit 2, ¶ 7.) Even then, however, the Parties then spent five more weeks drafting and negotiating the final written settlement agreement. (*See id.*)

On August 20, Plaintiff submitted its Motion for Preliminary Approval of Class Action Settlement. (Docket No. 24.) On August 29, this Court granted preliminary approval of the Settlement, certified the Settlement Class, and appointed Joseph J. Siprut of Siprut PC as Class Counsel and Plaintiff as Class Representative. (Docket No. 28.) The Court set a Final Fairness Hearing for December 2. (Docket No. 28.)

On November 13, Plaintiff submitted its Motion for Attorneys' Fees and Costs. (Docket No. 30.) The Court has taken the Motion under advisement. (Docket No. 33.)

On November 25, the Parties submitted a Joint Motion to Reset the Fairness Hearing. (Docket No. 31.) The Court granted the Parties Joint Motion and reset the Fairness Hearing for January 30, 2015. (Docket No. 33.)

## III.   COMPONENTS OF THE SETTLEMENT

### A.   Benefits to Settlement Class Members

The Settlement establishes the following relief for the Settlement Class Members:

- **Payments Available to All Class Members.** Class members must sign the Proof of Claim form under oath and return it to the claims administrator by U.S. mail or facsimile. Proof of claim forms returned by U.S. mail must be postmarked on or before the 45th day after the claims administrator mails the forms to Class members. Proof of claim forms returned by facsimile must be faxed to the claims administrator on or before the 45th day after the claims administrator mails the forms to Class members. Each Class member who submits a timely and valid Proof of Claim form shall receive $50 for each unique fax number that matches Grubhub's business records, regardless of the number of faxes there were sent to or received at that fax number.

- **No Unclaimed Property.** Any portion of the Settlement Fund that is not paid to claiming class members, to the Class Representative, to Class Counsel, to notify the Class, or to a third-party claims administrator shall not be paid by and shall revert to Grubhub.

- **Pro Rata Reduction.** If the total number of valid claim forms submitted exceeds the remaining amount of the Settlement Fund after subtracting Class Counsel's fees and costs, the Class Representative's incentive award, and class notice and administration

costs, then the claiming Class members shall receive a *pro rata* share of the remaining amount of the Settlement Fund for each matching fax number.

**B.     Incentive Award to Class Representative**

Subject to Court approval, the class representative will request a service award of $5,000 in recognition of Plaintiff's contributions to the Class, the time it spent assisting with the prosecution of this case, and the risk it incurred in commencing the action, both financial and otherwise.

**C.     Attorneys' Fees and Costs**

Subject to Court approval, Grubhub has agreed not to oppose Plaintiff's request for fees and costs in the amount of up to 20% of the Settlement Fund ($405,360) to Class Counsel. These benefits are paid directly by Grubhub and do not reduce or dilute the Class benefits in any way. Plaintiff's Motion for Approval of Attorneys' Fees Costs, Expenses, and Incentive Award, which substantiates Plaintiff's Counsel's fee request in detail, was filed on November 13, 2014 and is now pending before this Court. (Docket No. 30.)

**IV.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED BECAUSE IT MEETS ALL THE REQUIREMENTS OF RULE 23**

**A. Certification of the Proposed Settlement Class**

To certify a class under Rule 23, the Court must find that the proposed class meets the elements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2) or (3). *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). "Settlement is relevant to class certification" and is "a factor in the calculus." *Id.* at 619, 622. Indeed, the Supreme Court "has expressly approved the use of the class settlement device." *Id.* at 618. Plaintiff seeks conditional certification of the Settlement Class under Rule 23(b)(3), its appointment as class representative solely for the purposes of the Settlement, and appointment of its counsel as Class Counsel solely for the purposes of the Settlement.

-4-

The Plaintiff requests that the Court, for the purposes of settlement, certify a Settlement Class defined as:

> All individuals or entities in the United States who, on or before the date of preliminary approval, received from or on behalf of Grubhub, Inc. n/k/a Grubhub Holdings, Inc., Grubhub Seamless, Inc. n/k/a Grubhub, Inc. or any of their predecessors or affiliated entities or individuals one or more (i) unsolicited facsimile advertisements or (ii) facsimile advertisements that did not contain the opt-out language required by the Telephone Consumer Protection Act ("TCPA").

> Excluded from the Class are Grubhub, any parent, subsidiary, affiliate or controlled person of Grubhub, as well as the officers, directors, agents, servants or employees of Grubhub and the immediate family members of such persons, and members of the judiciary.

As discussed further below, the proposed Settlement Class meets each of the requirements of Rules 23(a) and (b), and therefore, certification is appropriate.

**1.      Numerosity — Federal Rule of Civil Procedure 23(a).**

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement there is no specific number required, nor is a plaintiff required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). *See also* Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2001). Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, 2004 WL 719278, at *2 (N.D. Ill. March 31, 2004). Generally, where the membership of the proposed class is at least 40, joinder is impracticable and the numerosity requirement is met. *Pope v. Harvard Banchares, Inc.*, 240 F.R.D. 383, 387 (N.D. Ill. 2006).

In this case, Grubhub's Salesforce database reveals that up to 38,752 individuals or entities may have received faxes regarding Grubhub's services at 40,659 unique fax numbers. (*See* Siprut Decl. ¶ 11; Declaration of Thomas Hayden (the "Hayden Decl.,") attached hereto as Exhibit 3, ¶ 4.) Accordingly, the Class satisfies the numerosity requirement. *See* NEWBERG ON CLASS ACTIONS § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands. . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

## 2. Commonality/Predominance — Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).

The commonality element requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013), *reh'g denied* (Sept. 24, 2013), *cert. denied,* 134 S. Ct. 1318, 188 L. Ed. 2d 306 (U.S. 2014). Courts recognize that there may be factual differences between class members, but "factual variations among class members' claims" do not themselves "defeat the certification of a class." *Patterson v. Gen. Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980), *cert. denied*, 451 U.S. 914 (1980); *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992), *cert. denied*, 506 U.S. 1051 (1993). In fact, the threshold for commonality is not high. *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Rather, commonality exists if a common nucleus of operative fact exists, even if as to one question of law or fact. *Whitten v. ARS Nat'l Servs. Inc.*, 2001 WL 1143238, at *3 (N.D. Ill. Sept. 27, 2001) (commonality is often found where "defendants have engaged in standardized conduct toward the members of the proposed class."); *see Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (stating that

"commonality requires that the claims of the class simply "depend upon a common contention . . . of such a nature that it is capable of class-wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

As alleged in Plaintiff's Complaint, all Settlement Class members share common questions of fact and law that predominate over issues affecting only individual Settlement Class members. Those common factual and legal issues for the Class include (1) whether Grubhub engaged in a pattern of sending fax advertisements; (2) the manner in which Grubhub compiled or obtained its list of fax numbers; and (3) whether Grubhub violated the TCPA.

Additionally, Rule 23(b)(3) provides that a class action may be maintained where the questions of law and fact common to members of the proposed class predominate over any questions affecting only individual members. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). "Predominance is a question of efficiency." *Butler v. Sears, Roebuck & Co.*, 2012 WL 5476831, at *2 (7th Cir. Nov. 13, 2012). "A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defect that may have imposed costs on tens of thousands of consumers yet not a cost to any one of them large enough to justify the expense of an individual suit." *Id.* In this case, common questions predominate for the Class because, as alleged by Plaintiff, Grubhub's conduct is *identical* with regard to all members of the proposed Settlement Class. Thus, the predominance requirement is satisfied because liability and damages would have been decided predominantly, if not entirely, based on common evidence of Grubhub's conduct.

### 3.    Typicality — Federal Rule of Civil Procedure 23(a)(3).

Rule 23 also requires that a plaintiff's claims be typical of other class members' claims. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to the commonality requirement and is satisfied if the plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). The existence of factual differences will not preclude a finding of typicality. *Id.* "Typicality does not mean identical, and the typicality requirement is liberally construed." *In re Neopharm, Inc. Securities Litig.*, 225 F.R.D. 563, 566 (N.D. Ill. 2004) (citation omitted).

Here, Plaintiff and the Settlement Class all received fax advertisements, and alleged that Grubhub sent or had sent on its behalf the faxes in violation of the TCPA, thereby entitling Plaintiff and the Settlement Class to actual or statutory damages. Moreover, there are no defenses that pertain to Plaintiff that would not also pertain to the Settlement Class. Accordingly, Plaintiff's claims are typical of the other Settlement Class members' claims.

### 4.    Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).

The final Rule 23(a) prerequisite requires that a proposed class representative "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy requirement, class representatives must establish that: (i) their claims are not in conflict with those of the proposed class, (ii) they have sufficient interests in the outcome of the case, and (iii) they are represented by experienced, competent counsel. *Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008). Furthermore, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by

class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Here, Plaintiff's interests are consonant with the interests of the other Settlement Class members – obtaining relief from Grubhub for its marketing of its services by facsimile transmissions. Plaintiff has no interests antagonistic to the interests of the other Settlement Class members. (*See* Siprut Decl. ¶ 13.) Moreover, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have significant experience in consumer class actions involving similar issues, scope, and complexity. (*Id.* ¶ 12.) Accordingly, both Plaintiff and its counsel have adequately represented the Settlement Class.

**5.      Superiority — Federal Rule of Civil Procedure 23(b)(3).**

In addition to satisfying Rule 23(a), a plaintiff seeking certification must satisfy one of the provisions of Rule 23(b). Rule 23(b)(3) provides that matters pertinent to a finding of superiority include: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3).

The present class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the other Settlement Class members' claims. The burden and expense of individual prosecution makes a class action superior to other available methods of resolution. Thus, absent a class action, Plaintiff contends it would be difficult, if not impossible, for individual members of the Settlement Class to obtain effective relief.

In sum, the Settlement Class meets the requirements of Rule 23(a) and 23(b)(3) and should be certified.[2]

## V.    THE PROPOSED SETTLEMENT IS FAIR AND SHOULD RECEIVE FINAL APPROVAL.

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996); *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312 (7th Cir. 1980) ("It is axiomatic that the federal courts look with great favor upon the voluntary resolution of litigation through settlement."). Courts look upon the settlement of lawsuits with favor because such settlements promote "the interests of litigants by saving them the expense and uncertainties of trial, as well as the interests of the judicial system by making it unnecessary to devote public resources to disputes that the parties themselves can resolve with a mutually agreeable outcome." *Hispanics United of DuPage Cty. v. Vill. Of Addison, Ill.*, 988 F.Supp. 1130, 1149 (N.D. Ill. 1997). Indeed, compromise is particularly appropriate in complex class action cases. *See id.*

In determining whether a district court should exercise its discretion to approve a class settlement as "fair," the Seventh Circuit has explained that district courts should "consider the facts in the light most favorable to the settlement," *Isby*, 75 F.3d at 1198-99 (*citing E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985)), and has identified several factors for analyzing whether a class action settlement should be given final approval including: (1) the strength of the plaintiffs' case on the merits measured against the terms of the settlement; (2) the complexity, length, and expense of continued litigation; (3) the amount of opposition to the settlement; (4) the presence of collusion in gaining a settlement; and (5) the stage of the

---

[2] As detailed in the Settlement Agreement, Grubhub does not oppose the request for class certification solely for the purposes of settlement.

proceedings and the amount of discovery completed. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997); *see also, e.g., Am. Civil Liberties Union of Ill. v. U.S. Gen. Servs. Admin.*, 235 F. Supp. 2d 816, 818 (N.D. Ill. 2002). In weighing these factors, the district court should "recognize[] that the first factor, the relative strength of plaintiffs' case on the merits as compared to what the defendants offer by way of settlement, is the most important consideration." *Isby*, 75 F.3d at 1199.

The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also Hiram Walker*, 768 F.2d at 889 *cert. denied*, 478 U.S. 1004 (1986); *Isby*, 75 F.3d at 1196-97. Instead, a court's inquiry should be "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196.

Likewise, the Seventh Circuit has urged district courts to be mindful that "[t]he essence of settlement is compromise," so "the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution *after* trial." *Hiram Walker*, 768 F.2d at 889. Indeed, a district court should not reject a settlement "solely because [the settlement] does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200. Analysis of all these factors weighs in favor of finally approving the Settlement.

### A.  Strength of the Case Measured Against the Settlement

The "most important factor relevant to the fairness of a class action settlement" is the "strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

Plaintiff alleges that Grubhub violated the TCPA by sending unsolicited advertisements with deficient opt-out notices *en masse* to thousands of facsimile machines throughout the United States. Class Counsel and Plaintiff believe they have a strong case that Grubhub's conduct constituted a violation of the TCPA.[3] Plaintiff believes that through discovery and independent investigation, it would be able to establish at trial that Grubhub's actions were unlawful.

While Plaintiff believes in the strength of its case, it must, however, realistically acknowledge several factors which counsel in favor or acceptance of this Settlement. For instance, Grubhub contends that the faxes at issue are not "unsolicited advertisements" and that the faxes were not received on a computer or other device that qualifies as a "telephone facsimile machine" within the meaning of the TCPA. Grubhub also contends that it had prior express consent from some of the class members such that even if the faxes were advertisements, they were not unsolicited. In addition, Grubhub claims that it has an established business relationship within the meaning of 47 U.S.C. § 227(b)(1)(C). (*See* Hayden Decl. ¶ 2 (stating that Grubhub sent "groups of faxes to current and prospective restaurant customers").) If Grubhub satisfies the criteria of an established business relationship set forth in that subsection, Grubhub's facsimile activity is not unlawful under the TCPA. *See Craftwood Lumber Co. v. Interline Brands, Inc.*,

---

[3] When analyzing a settlement, a court should take counsels' and the parties' views into account. *In re Cendant Corp. Secs. Litig.*, 109 F. Supp. 2d 235, 255 (D.N.J. 2000) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class.") (internal citation and quotations omitted); *In re RJR Nabisco, Inc. Secs. Litig.*, Nos. MDL No. 818 (MBM), 88 Civ. 7905 (MBM), 1992 WL 210138, at *4, (S.D.N.Y. Aug. 24, 1992) (court "should give deference, when considering the fairness of the proposed settlement, to the judgment of experienced class counsel"); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (holding that in analyzing a class settlement, a trial court may rely on the judgment of experienced counsel and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"). Also significant is the fact that Grubhub and its counsel support this Settlement. *Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308, 316 (S.D.N.Y. 1969) (the Court may consider the views of all involved counsel when deciding whether to approve a settlement).

2013 WL 4598490, at *1 (N.D. Ill. Aug. 29, 2013) (Grady, J.) ("There are two defenses to a Junk Fax Act claim: prior express invitation or permission ('PEP') and established business relationship ('EBR')."). Furthermore, Grubhub asserts that it is not vicariously liable for the actions of any third party that sent the faxes.

Informal discovery has also revealed that Grubhub may successfully challenge class certification on a contested basis. For example, if Grubhub demonstrates that either PEP or EBR applies to Plaintiff, then both the typicality and adequacy elements of Rule 23 are jeopardized. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) ("The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation. The fear is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer.").

Furthermore, "given the variety of circumstances in which such numbers may be distributed (business cards, advertisements, directory listings, trade journals, or by membership in an association), it [is] appropriate to treat the issue of consent in any complaint regarding unsolicited facsimile advertisements *on a case-by-case basis* " and that "express permission to receive a faxed ad requires that the consumer *understand* that by providing a fax number, he or she is agreeing to receive faxed advertisements." *CE Design*, 637 F.3d at 726 (quoting *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 F.C.C.R. 14014, 14129 (F.C.C. 2003), 2003 WL 21517853) (emphasis original). *But see Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an

advertisement, are common to all recipients."), *reh'g denied* (Sept. 24, 2013), *cert. denied*, 134 S. Ct. 1318 (2014).

Similarly, Grubhub's PEP and EBR defenses may impede the predominance element of Rule 23. *See G.M. Sign, Inc. v. Brink's Mfg. Co.*, 2011 WL 248511, at *8-9 (N.D. Ill. Jan. 25, 2011) ("[W]ere the Court to certify the Complaint's proposed class, it would have to engage in a class-member-specific inquiry to determine whether each recipient did indeed give permission or have an established business relationship with Defendant at the pertinent time. . . . [I]t seems unavoidable that the Court would have to conduct a series of mini-trials to determine the facts of prior business relationships and consent. It would have to do so both to establish the population of the class, and to determine liability."); *Gene & Gene L.L.C. v. BioPay, L.L.C.*, 541 F.3d 318, 326 (5th Cir. 2008) ("[T]he plaintiff had "failed to advance any viable theory employing generalized proof concerning the lack of consent with respect to the class . . . this leads to the conclusion that myriad mini-trials cannot be avoided."); *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1169 (S.D. Ind. 1997) ("Because Kenro's class definition would require the court to conduct individual inquiries with regard to each potential class member in order to determine whether each potential class member had invited or given permission for transmission of the challenged fax advertisements, Kenro has failed to meet the requirements of Rule 23(a).").

To be clear, Plaintiff is not suggesting that class certification would be impossible here. But, we are acknowledging what we must: the issues of PEP and EBR loom large in TCPA cases such as this, where Grubhub has contended that the recipients of the faxes at issue each gave their permission to receive the faxes. If we proceeded all the way through fact discovery and briefed class certification on a contested basis, and if the Court were to deny class certification, the Class would get *nothing*. And even if a Class were certified, we would still have to continue

prosecuting the case to prevail on liability – which Grubhub would surely challenge based not only on the content of the fax, but also on the grounds that the fax campaign was orchestrated by a third-party for which it is not vicariously liable. These litigation risks, coupled with the substantial material benefits the Settlement will garner for Settlement Class Members, weigh in favor of final approval of the Settlement. While Plaintiff believes in the strength of its liability case, it must realistically recognize that a finding of no liability is possible.

Also, the sheer amount of time it will take to litigate the case to conclusion weighs in favor of accepting the Settlement now. Under this Settlement, the Settlement Class will realize substantial and immediate benefits once the Settlement is approved. As explained above, the Settlement allows Settlement Class Members to receive monetary relief. While Plaintiff believes that its claim for maximum statutory damages under the TCPA is strong, Plaintiff is also aware of the inherent risks and costs of continuing with complex litigation of this nature. If Grubhub were to prevail on any of its asserted defenses, Settlement Class Members, including Plaintiff, would receive no relief *at all*. Given this possibility, a monetary payment of $50 per Settlement Class Member is a meaningful achievement. Accordingly, the Settlement provides a tangible benefit to all those affected by Grubhub's alleged violation of the TCPA.

In all events, a settlement will not be rejected simply because it does not provide a complete victory to the plaintiffs (assuming that "complete victory" could be defined within the context of this litigation). *See Hiram Walker*, 768 F.2d at 889. While it might be possible that, if the case were litigated to a conclusion, some class members would be able, at some unknown point in the future, to obtain a greater recovery through individual proceedings, it is also possible they could get less or nothing at all. Moreover, that recovery would be years in the future, at

-15-

significantly greater expense to the Class. There is a significant risk that the Class would receive less or nothing at all if litigation proceeded to the bitter end.

This first factor – which the Seventh Circuit has reiterated is "the most important" one, *Isby*, 75 F.3d at 1199; *Hiram Walker*, 768 F.2d at 889 – weighs strongly in favor of approving the Settlement because the class would receive substantial benefits despite Grubhub's colorable defenses. A comparison of the many obstacles to success on the merits in this class action against the monetary and other benefits contemplated by the Settlement Agreement supports the conclusion that this Settlement is fair, reasonable and adequate.

### B. The Complexity, Length, and Expense of Continued Litigation

Due to the nature of Plaintiff's case, trial will require the collection of evidence and witness testimony from across the country. Both Parties would examine a number of Grubhub's current and former employees. Grubhub intends to assert a number of affirmative defenses that it contends bar Plaintiff's claim in whole or in part. Grubhub would present — and Plaintiff would necessarily attempt to rebut — evidence and testimony on whether individual Class members provided prior express consent to or had an existing business relationship with Grubhub. The uncertainty as to whether these affirmative defenses apply in this case creates substantial risk for both sides. Plaintiff and proposed Class Counsel also recognize that the expense, duration, and complexity of protracted litigation would be substantial, and would require further briefing on numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses.

### C. The Amount of Opposition to the Settlement

Since this Court granted preliminary approval of the Settlement on August 29, 2014, *no individuals or Attorneys General have objected to the Settlement* and *no individuals have opted out*. (*See* Declaration of Brian Radetich re: Notice Procedures (the "Radetich Decl."), attached

hereto as Exhibit 4, ¶¶ 13-14.) Thus, there has been no opposition to the settlement. *See In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F.Supp.2d 935, 961 (N.D. Ill. 2011) ("[I]t is illuminative that only a tiny fraction of the Class Members saw fit to opt out or to object."); *In re Mexico Money Transfer Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (holding that the fact that "99.9% of class members have neither opted out nor filed objections. . . is strong circumstantial evidence in favor of the settlements"), *aff'd,* 267 F.3d 743 (7th Cir. 2001). Thus, this factor weighs strongly in favor of final approval.

### D. The Lack of Collusion in Reaching a Settlement

Courts generally presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion in the absence of evidence to the contrary. *See Mars Steel v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 681-82 (7th Cir. 1987); *Armstrong*, 616 F.2d at 325. This presumption is applicable here. The Settlement was reached only after nearly four months of settlement discussions. (*See* Siprut Decl., ¶ 7.)

This Settlement is not the result of collusion between the parties to compromise the rights of absent class members. Recently, the Seventh Circuit reversed approval of a settlement where it held "almost every danger sign" was present. *Eubank v. Pella Corp.*, 753 F.3d 718, 728 (7th Cir. 2014). Specifically, the Seventh Circuit found the following issues: fatal conflicts of interest; opposition by named plaintiffs; a provision requiring class members to risk recovering nothing by submitting their claims to arbitration, where the defendants had reserved defenses, in order to be eligible for any meaningful settlement distribution; an award of only coupons to a portion of the class; twelve- to thirteen-page claim forms requiring class members to submit "a slew of arcane data, including the "product identity stamp," "Unit ID Label," and purchase order number of the product at issue; and an unnecessarily complex settlement notice. *Eubank*, 753 F.3d at

721. None of these danger signs are present here. Neither Plaintiff nor Counsel has a conflict of interest. (*See* Siprut Decl. ¶ 13.) The only named Plaintiff supports the Settlement. And most importantly, Class members were not subjected to providing a slew of arcane data or fill out a 12- to 13-page claim form to receive a benefit. Under the Settlement, Class members needed to only file a 1-page Claim Form asking for basic contact information and only 4 questions to receive a cash benefit of $50. Where – as here – the class members receive immediate and meaningful relief, courts have approved the settlement as fair. *See, e.g.*, *Hall v. Bank of Am., N.A.*, 2014 WL 7184039, at *6 (S.D. Fla. Dec. 17, 2014) (approving settlement after examining objectors' arguments based on *Eubank*). Simply put, this Settlement resulted in all Settlement Class Members getting certain, immediate and meaningful benefits.

### E.  The Stage of the Proceedings and the Amount of Discovery Completed

The last factor to be considered by the Court is the stage of the proceedings and the amount of discovery completed. While the Parties have informally exchanged information critical to evaluating the strength of Plaintiff's contentions (and Grubhub's defenses), the amount of *formal* discovery taken is not a prerequisite to a class action settlement. Courts have noted that, "the label of 'discovery' [either formal or informal] is not what matters. Instead, the pertinent inquiry is what facts and information have been provided." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2007) (internal citation omitted); *see also In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 2010) ("It is true that very little formal discovery was conducted and that there is no voluminous record in the case. However, the lack of such does not compel the conclusion that insufficient discovery was conducted." (emphasis omitted)); MANUAL FOR COMPLEX LITIGATION (Fourth), § 11.423 (2004) (noting that informal discovery is a recognized method of minimizing the cost, delay and burden associated with formal discovery).

Here, ample information and data was exchanged as part of the informal discovery processes undertaken for settlement purposes. Class Counsel requested, and Grubhub provided, information concerning the size of the Class and the nature of the faxes. Class Counsel was thus well-equipped not just to make the decision whether to settle on behalf of the Class, but also what the terms of such settlement would be.

## VI.     THE COURT-APPROVED NOTICE PROGRAM SATISFIES DUE PROCESS

The Parties effectuated class notice in a reasonable manner that was calculated to reach as many Class Members as possible who would be bound by the Settlement. In this case, direct notice by mail and website notice was available for the Class. The notice plan approved by the Court on August 29, 2014 (Docket No. 28) provided the best notice practicable to apprise the Settlement Class of the pendency of this Litigation, afforded them an opportunity to opt out of or present any objections to this Settlement, and complied fully with due process, as already found in the Preliminary Approval Order. *Id.*

Grubhub and its retained Claims Administrator – Heffler – provided the Class with Notice of the proposed settlement by the following methods, previously approved by the Court:

- **Mailed Notice**. On October 6, 2014, the Claims Administrator printed and mailed the Notices and Claim Forms, via first-class mail, to the last known address of each Settlement Class Member.  The Claims Administrator further preformed a "skip trace" search for mail that was returned as undeliverable in order to find updated mailing addresses.  (Radetich Decl., ¶8.)

- **Internet Posting**. Class Counsel also set up a Website – at its own expense – and posted the relevant documents, including, but not limited to, applicable deadlines, Class Counsel's contact information, and copies of the Class Notice; a downloadable Claim Form that could be submitted by facsimile or U.S. Mail; the Settlement Agreement; Preliminary Approval

Order; and Fee Petition. (*See* Siprut Decl. ¶ 14.)

Accordingly, the form and method of notice given to class members satisfies all the legal requirements of Rule 23, as well as the constitutional due process requirements.

**VII.    CONCLUSION**

For the reasons set forth above, Class Counsel requests that the Court enter an order granting final approval to the settlement in the form of the proposed order attached hereto as Exhibit 5.

Dated: January 23, 2015                             Respectfully submitted,

                                                    ILLINOIS NUT & CANDY HOME OF
                                                    FANTASIA CONFECTIONS, LLC,
                                                    individually and on behalf of all others
                                                    similarly situated


                                                    By:    */s/ Joseph J. Siprut*
                                                        One of the Attorneys for Plaintiff
                                                        And the Settlement Class

Joseph J. Siprut
*jsiprut@siprut.com*
Gregg M. Barbakoff
*gbarbakoff@siprut.com*
Ismael T. Salam
*isalam@siprut.com*
**SIPRUT** PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
312.236.0000
Fax: 312.241.1260
www.siprut.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **Plaintiff's Motion for Final Approval of Class Action Settlement** was filed this 23rd day of January 2015, via the electronic filing system of the Northern District of Illinois, which will automatically serve all counsel of record.


*/s/ Joseph J. Siprut*

Joseph J. Siprut
